DECISION
Before the Court is the Town of North Providence's ("Town") petition, pursuant to G.L. 1956 § 28-9-18, to vacate an Arbitration Award ("Award") issued on March 23, 2011. The North Providence Fire Department, IAFF Local 2334 ("Union") objects to the petition. Jurisdiction is pursuant to § 28-9-14.
 I Facts and Travel
This dispute arose over the manner of calculation of a cost of living adjustment ("COLA") to which retired employees with service-connected disabilities are entitled pursuant to Article XI of the Collective Bargaining Agreement ("CBA").[1] The provisions of the CBA in issue provide as follows:
 ARTICLE XI Section 3. Injuries and Illness
 Should an employee be declared totally and permanently disabled for any employment upon service connected disability retirement, *Page 2 
the Town agrees to supplement the pension plan benefits as follows:
 Monthly payments to the employees in an amount equal to the difference between the pension benefit and the monthly net pay the employee received at retirement (not including pension deductions) up to the 25th anniversary of his employment with the Fire Department. The Town agrees to include a cost-of-living increase to the employee's pension from the 25th
anniversary date.
 Cost of Living Defined:
 Cost of living shall be an increase in the form of a cost-of-living adjustment paid by the Town which shall be added to the amount of the employees's pension and shall be based upon the "United States Department of Labor, Bureau of Labor Statistics, Consumer Price Index — United States." The base year shall be 1967-100.
The Union argued that Article XI of the CBA contemplates that the COLA be calculated on a compounded basis. The Town, on the other hand, contended that any adjustment be calculated by applying the cost-of-living increase to the employee's pension benefit unenhanced by increases for previous years, (i.e., not compounded). The arbitrator concluded that the intent of the parties, as he gleaned it from the language of the CBA as a whole, was that the annual COLA's to the pensions of firefighters who retired due to work-related disabilities be compounded.
The Town, in the instant motion, contends that the arbitrator exceeded his power in rendering his award in that he reached an irrational result. Therefore, the Town argues that the Award should be vacated. See City of E. Providence v. UnitedSteelworkers of Am., Local 15509, 925 A.2d 246 (R.I. 2007) (holding a reviewing court must vacate an arbitration award when an arbitrator exceeds his or her powers). The Union counters that the Award of the arbitrator was based on a reasonable interpretation of the CBA and, thus, should not be disturbed. *Page 3 
 II Standard of Review
"Public policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity." City of E. Providence v.Int'l Ass'n of Firefighters Local 850,982 A.2d 1281, 1285 (R.I. 2009). "Only in cases in which an award is so tainted by impropriety or irrationality that the integrity of the process is compromised should courts intervene." AetnaCas. Sur. Co. v. Grabbert, 590 A.2d 88, 92 (R.I. 1991). "A judicial reversal of an arbitration award based solely on the reviewing court's disagreement with the arbitrators' interpretation of the contract would not only nullify the bargain made by the parties but also threaten the strong public policy that favors private settlement of grievance disputes arising from collective bargaining agreements." Belanger v. Matteson,115 R.I. 332, 355-56, 346 A.2d 124, 138 (R.I. 1975) (citation omitted).
"The authority of the courts in this jurisdiction to review an arbitral award is statutorily prescribed and is limited in nature."N. Providence Sch. Comm. v. N. Providence Fed'n of Teachers,Local 920, Am. Fed'n of Teachers, 945 A.2d 339, 344 (R.I. 2008). On appeal, this Court reviews arbitration awards in accordance with § 28-9-18(a), which requires the Court to vacate an arbitrator's award in three specific circumstances. State Dep'tof Corrections v. Rhode Island Bhd. of Corr. Officers,867 A.2d 823, 828-29 (R.I. 2005); seealso § 28-9-18(a). Only one of those three circumstances is at issue in the instant appeal: under § 28-9-18(a)(2), the Court must vacate an award "[w]here the arbitrator or arbitrators exceeded their powers." State Dep't of Corrections, 867 A.2d at 828.
An arbitrator exceeds his powers "by resolving a non-arbitrable dispute or if the award fails to `draw its essence' from the agreement, if it was not based upon a `passably plausible' interpretation thereof, if it manifestly disregarded a contractual provision, or if it reached an *Page 4 
irrational result." Woonsocket Teachers' Guild, Local 951, AFT v.Woonsocket Sch. Comm., 770 A.2d 834, 837 (R.I. 2001) (quotingState Dep't of Children, Youth and Families v. Rhode IslandCouncil 94, 713 A.2d 1250, 1253 (R.I. 1998)). Arbitrators have "the authority to interpret the contract, giving due regard to each provision, but they do not have the power and authority to rewrite it." Town of Coventry v. Turco, 574 A.2d 143, 147 (R.I. 1990).
This Court will overturn an arbitration award "if the award was irrational or if the arbitrator manifestly disregarded the law."Purvis Systems, Inc. v. Am. Sys. Corp.,788 A.2d 1112, 1115 (R.I. 2002). "[A] manifest disregard of the law requires `something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.'" N. Providence School Committee,945 A.2d at 344 (quoting Westminster Constr. Corp. v. PPG Indus.,Inc., 119 R.I. 205, 211, 376 A.2d 708, 711 (R.I. 1977)). Not only may an arbitrator make rulings on the applicable law, but an arbitrator's award will be upheld even if he or she makes a mistake or error in interpreting the law. Pier House Inn,Inc. v. 421 Corp., Inc., 812 A.2d 799, 803 (R.I. 2002).
 III Analysis
The arbitrator began his analysis by recognizing that his role was limited to interpreting the parties' contractual provisions and not adding, deleting, or altering them in any way. (Arbitration Dec. at 7.) See Turco,574 A.2d at 147 (holding an arbitrator has the authority to interpret a contract but does not have the power and authority to rewrite it).
It is evident that the arbitrator, in determining that the parties intended that the COLA provided for disabled retirees on the 25th anniversary of their retirement be compounded, examined the language of Art. XI, § 3, in the context of the agreement as a whole. For example, he compared the language in question with the language used to define the COLA available to *Page 5 
employees, generally, found in Art. XIV of the CBA.[2] The arbitrator saw significance in the fact that in Art. XIV, the parties expressly provided that the COLA not be compounded. Also, he noted that Art. XIV, in defining the non-compounding COLA, specifies that the annual three (3%) percent adjustment be applied to the "original retirement allowance." (Arbitration Dec. at 13-14) (Emphasis added.) In contrast, Art. XI, in defining the COLA in issue provides that the annual adjustment, arrived at by reference to the Consumed Price Index ("CPI"), be "added to the amount of the employees' pension . . ." signifying to the arbitrator an intent that the COLA be calculated annually using as a basis the total prior year's pension, inclusive of previous adjustments, i.e., that the COLA be compounded. Id.
The Court finds the arbitrator's interpretation of the contract provision in question reasonable and in line with the obvious purpose of COLA provisions, generally, that is, to offset the effects of inflation on a pensioner's standard of living.See Dubis v. E. Greenwich Fire District,754 A.2d 98, 100-01 (R.I. 2000) (holding "the most reasonable way that . . . compounded COLA could be tied to cost-of-living rises in the economy is for it to be calculated *Page 6 
using the entire pension benefit of the previous year as a base, including the previous year's COLA.")
The Town suggests that the absence of express language specifying that the COLA in question should be compounded yields the conclusion that the arbitrator impermissibly added to the CBA, rendering his award irrational. The Court disagrees. The arbitrator, as part of the interpretive process, was entitled to discern the parties' intent by reference not only to the language of the agreement but also, to "consider the situation of the parties and the accompanying circumstances at the time the contract was entered into."See W.P. Assocs. v. Forcier, Inc.,637 A.2d 353, 356 (R.I. 1994); see also Restatement (Second) Contracts § 202 cmt. e (1979).
In addition, the Town argues that the law disfavors compounding interest absent statutory or contractual provision for same. The Town cites as authority decisions dealing with the computation of interest on judgments, and interest on loans. See.Berman v. B.C. Assocs., 219 F.3d 48, 55 (1st Cir. 2000) (finding compound interest would not be awarded unless it was expressly stated in the deficit loan provision of a partnership agreement); Imperial Cas. Co. v. Bellini,947 A.2d 886, 894 (R.I. 2008) (reciting the general proposition that Rhode Island courts disfavor compounding interest on monetary awards in a judgment unless the General Assembly has specifically authorized such compounding). However, the difference between the policy considerations underlying the provision of cost of living, wage adjustments, and those underlying provisions concerning the accrual of interest on judgments or loans are too obvious to require elaboration. For that reason, the Court finds the cases cited inapposite and the movant's argument unpersuasive. *Page 7 
More pertinent to the question at hand is the decision of the West Virginia Supreme Court in Bd. of Trs. of Firemen'sPension Relief Fund of the City of Fairmont v. City ofFairmont, 215 W.Va. 366, 599 S.E.2d 789 (W.Va. 2004). There, the West Virginia Court, interpreting a statute, determined that the statutorily provided CPI-based supplement to police and firemen's pensions should be compounded despite the absence of language expressly so directing. Id. at 371, 599 S.E.2d at 794. The court looked to the policy underlying the pension supplement which it saw as a measure "to obviate to some degree the effects of inflation due to the fact that the annual percentage increase is tied to the Consumer Price Index." Id.
 Conclusion
In sum, for the reasons set forth above, this Court finds that the arbitrator's interpretation of Article XI, § 3, of the CBA in respect to the manner of calculation of the COLA is reasonable and draws its essence from the CBA. Woonsocket Teacher's Guild,770 A.2d at 837. Consequently, the Town's petition to vacate the Award is denied.
Counsel for the prevailing party shall submit an appropriate judgment for entry.
[1] Also submitted to arbitration was the issue of whether the Town violated the CBA when it discontinued the supplemental pension payments to retired firefighter Michael Russo. The arbitrator held the CBA was not violated and the parties have not challenged the award in that respect.
[2] Art. XIV, in pertinent part, provides as follows:
 A. * * * *
 B. All members and beneficiaries of members who retire on or after July 1, 1982 shall, on the 1st day of January following the date of retirement receive a cost-of-living adjustment in an amourt equal to three (3%) percent of the original retirement allowance. In each succeeding year thereafter, in the month of January, the retirement allowance shall be increased an additional three (3%) percent of the original retirement allowance, not compounded. The Town shall pay the cost of this annual increase. (Emphasis added.)
 * * * * *Page 1